UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JUDICIAL WATCH, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 16-1888 (RMC) |
| U.S. DEPARTMENT OF JUSTICE, | ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OPINION**

Judicial Watch, Inc. filed a Freedom of Information Act (FOIA) request seeking records from the Federal Bureau of Investigation (FBI) regarding certain interviews during the investigation of Rod Blagojevich, the former governor of Illinois. The interviews of interest were FBI interviews of former President Barack Obama, former presidential Chief of Staff Rahm Emanuel, and former Senior Advisor to the President Valerie Jarrett.

After the FBI searched its records, it informed Judicial Watch that all records it had located would be withheld under various FOIA exemptions. Judicial Watch filed suit and both parties moved for summary judgment. This Court granted the government's Motion for Summary Judgment under FOIA Exemption 7(A), which protects law enforcement records, as the prosecution and conviction of Mr. Blagojevich was still subject to further appeal. *See Judicial Watch, Inc. v. DOJ*, 282 F. Supp. 3d 242 (D.D.C. 2017).

Judicial Watch filed an appeal. During the pendency of that appeal, Mr. Blagojevich's appeals ended when the Supreme Court denied his petition. *See Blagojevich v. United States*, 136 S. Ct. 1491 (2016). The case was therefore returned here for consideration of the remaining FOIA exemptions asserted by the FBI. Upon review of the entire record, the

1

Court once again agrees with the government that the records are exempt from disclosure. The Court will grant the Motion for Summary Judgment filed by the U.S. Department of Justice (DOJ) and will deny the cross motion filed by Judicial Watch.

## I. BACKGROUND

The facts of this case are described in detail in the Court's previous Memorandum Opinion and will not be repeated here. *Judicial Watch,* 282 F. Supp. 3d at 246-47. The relevant facts are summarized below with the addition of subsequent developments.

On May 9, 2012, Judicial Watch submitted requests to FBI's Record/Information Dissemination Section under the Freedom of Information Act, 5 U.S.C. § 552.[1] *See* Ex. A, Decl. of David M. Hardy (Hardy Decl.) [Dkt. 13-2], Judicial Watch Freedom of Information Act Request (FOIA Request) [Dkt. 13-2] at 27.[2,3] The FOIA Request asked for copies of all records related to interviews of three top Obama Administration officials, that is, the former President, his Chief of Staff, and Senior Advisor to the President concerning former Illinois Governor Rob Blagojevich. *Id*. at 28. The FBI's search for records located three forms 302 (Forms 302), which the FBI uses to summarize facts and statements made by potential witnesses during interviews. *See* Hardy Decl. ¶ 23; Decl. of Debra Riggs Bonamici (Bonamici Decl.) [Dkt. 13-3] ¶ 7. As Mr. Blagojevich's conviction for attempted extortion, wire fraud, and lying to federal investigators was still subject to further appeal at that time, the FBI notified Judicial Watch that it would be withholding the records pursuant to FOIA Exemption 7(A), which protects records

---

[1] Despite the June 1, 2011 date on the request, the parties agree that it was actually submitted in May 2012. *See* Pl.'s Resp. to Def.'s Statement of Material Facts (Pl.'s SOF) [Dkt. 16] ¶ 1.

[2] Since the FBI is a constituent entity of DOJ, that Department handles all FBI FOIA cases.

[3] When citing to exhibits to the declarations, the Court cites to the electronic case filing (ECF) header page number, not the original page number of the filed document.

compiled for law enforcement purposes.  *See* Ex. C, Hardy Decl., June 18, 2012 Letter from DOJ to Judicial Watch [Dkt. 13-2] at 34.  FBI also stated that the requested records were fully protected by FOIA Exemption 5, which protects attorney work-product, and protected in part by Exemptions 3, 6, 7(C), and 7(E).  *See* Hardy Decl. ¶ 37; Bonamici Decl. ¶¶ 4-8.  Judicial Watch filed suit to contest the applicability of the cited FOIA Exemptions and DOJ moved for summary judgment.  Def.'s Mot. for Summ. J. [Dkt. 13].[4]  Upon review, this Court granted DOJ's motion for summary judgment, allowing the Forms 302 to be withheld under Exemption 7(A).  *Judicial Watch*, 282 F. Supp. 3d at 250-51.  It did not reach the other claimed exemptions.

As Mr. Blagojevich had exhausted his appeals in the interim, the applicability of Exemption 7(A) became moot and the case was remanded for consideration of the additional FOIA Exemptions claimed by the FBI.  *See* Mandate [Dkt. 26].[5]

## II.    LEGAL STANDARD

FOIA "represents a balance struck by Congress between the public's right to know and the government's legitimate interest in keeping certain information confidential."  *Ctr. for Nat'l Sec. Studies v. DOJ*, 331 F.3d 918, 925 (D.C. Cir. 2003) (citing *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989)).  Under FOIA, federal agencies must release records to the public upon request, unless one of nine statutory exemptions apply.  *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 136 (1975); 5 U.S.C. § 552(b).  To prevail in a FOIA case, a plaintiff must show that an agency has improperly withheld agency records.  *See Odland v.*

---

[4] *See also* Mem. of P. & A. in Supp. of Def.'s Mot. for Summ. J. (Def.'s Mem.) [Dkt. 13-1]; Pl.'s Mem. of P. & A. in Opp'n to Def.'s Mot. for Summ. J. (Pl.'s Opp'n) [Dkt. 15]; Pl.'s Cross-Mot. for Summ. J. [Dkt. 16]; Mem. of P. & A. in Opp'n to Pl.'s Mot. for Summ J. and in Reply in Supp. of Def.'s Mot. for Summ. J. [Dkt. 17]; Pl.'s Reply to Def.'s Opp'n to Cross-Mot. for Summ. J. (Pl.'s Reply) [Dkt. 21].

[5] Section 552(a)(4)(B) of FOIA grants subject-matter jurisdiction and makes this an appropriate venue.  *Judicial Watch*, 282 F. Supp. 3d at 247 (citing 5 U.S.C. § 552(a)(4)(B)).

3

*FERC*, 34 F. Supp. 3d 3, 13 (D.D.C. 2014) (citing *DOJ v. Tax Analysts*, 492 U.S. 136, 142 (1989)). The defending agency must demonstrate that its search for responsive records was adequate, that any invoked exemptions actually apply, and that any reasonably segregable non-exempt information has been disclosed. *See id*.

FOIA cases are typically and appropriately decided on summary judgment. *See Sanders v. Obama*, 729 F. Supp. 2d 148, 154 (D.D.C. 2010). Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted when the pleadings, the discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The party moving for summary judgment "bears the initial responsibility . . . [to] demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In ruling on a motion for summary judgment, a court must draw all justifiable inferences in favor of the nonmoving party and accept the nonmoving party's evidence as true. *See Anderson*, 477 U.S. at 255. The nonmoving party, however, must provide more than the "mere existence of a scintilla of evidence . . . ; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Id*. at 252.

### III. ANALYSIS

#### A. Adequacy of the Search

FOIA requires an agency to conduct a good faith search that is reasonably calculated to produce all relevant records. *Oglesby v. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). An agency can support the adequacy of its search with affidavits that aver to its reasonableness; such affidavits are entitled to a presumption of good faith. *See Defs. of Wildlife*

*v. Dep't of Interior*, 314 F. Supp. 2d 1, 8 (D.D.C. 2004). A plaintiff can only rebut such affidavits when they are inadequate on their face or by a showing of bad faith sufficient to overcome the presumption that the agency acted in good faith. *See id*. If contested, the agency must prove the reasonableness and good faith of its search beyond material doubt. *See Nation Magazine, Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995).

Judicial Watch does not contest the adequacy of FBI's search. After review of the affidavits submitted by the government regarding the scope and methods of the search, and without opposition, the Court reaffirms that FBI met its obligation to conduct a reasonable search.

### B. FOIA Exemption 5

In a FOIA action, an agency seeking summary judgment must show that the withheld information is exempt from disclosure, and that all non-exempt material has been segregated and produced. *See* 5 U.S.C. § 552(a)(4)(B). To make the necessary showing on these points, an agency can again rely on detailed affidavits or declarations. *Ctr. for Int'l Envtl. Law v. Office of the U.S. Trade Representative*, 237 F. Supp. 2d 17, 22 (D.D.C. 2002).

On remand, the government renews its argument that the Forms 302 are covered by FOIA Exemption 5 and are not subject to disclosure. Exemption 5 allows agencies to withhold records that "would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). This description includes records that would be shielded from discovery by the attorney work-product doctrine. *See Judicial Watch, Inc. v. DOJ*, 432 F.3d 366, 369 (D.C. Cir. 2005). In most civil litigation, the traditional work-product doctrine may be subject to a balancing of needs between the litigating parties and offers lesser protection to fact work product (objective facts and information collected by the attorney or her

agents) than to opinion work product (theories and information flowing from the mental processes of the attorney). Although Congress intended Exemption 5 to be "as narrow as is consistent with efficient Government operations," *FTC v. Grolier Inc.*, 462 U.S. 19, 23 (1983), the D.C. Circuit has recognized that in the context of FOIA, the attorney work-product doctrine contains no balancing requirements and should "be interpreted broadly and held largely inviolate." *Judicial Watch*, 432 F.3d at 369. In other words, Exemption 5 extends the same protections to both kinds of work product. *See Martin v. Office of Special Counsel*, 819 F.2d 1181, 1187 (D.C. Cir. 1987) ("The work-product privilege simply does not distinguish between factual and deliberative material."). Therefore, "[a]lthough work product protection may be overcome for cause in civil cases, any materials disclosed for cause are not 'routinely' or 'normally' discoverable and, for that reason, are exempt under FOIA." *Williams & Connolly v. SEC*, 662 F.3d 1240, 1243 (D.C. Cir. 2011) (quoting *Grolier*, 462 U.S. at 26-27). If the records at issue here are protected by the attorney work-product doctrine, they are exempt from disclosure under Exemption 5.

The attorney work-product doctrine was explained in *Hickman v. Taylor*, 329 U.S. 495 (1947), as intended to protect lawyers and their agents who are assembling facts and law in anticipation of litigation. *Hickman* prevented the production of "oral and written statements of witnesses" made to attorneys or their agents. *Id.* at 508. Inasmuch as the same information was readily available to the opposing party if it conducted interviews or submitted interrogatories, the Court believed that compelling disclosure was more likely to promote "[i]nefficiency, unfairness and sharp practices" rather than transparency, and would all but ensure that "much of what is now put down in writing would remain unwritten." *Id.* at 511. Therefore, the Court warned that "[n]ot even the most liberal of discovery theories can justify

6

unwarranted inquiries into the files and the mental impressions of an attorney." *Id*. at 510. Today, the attorney work-product doctrine protects documents that were prepared in anticipation of litigation by an attorney or an attorney's agent. *See United States v. Deloitte LLP*, 610 F.3d 129, 135 (D.C. Cir. 2010) (citing Fed. R. Civ. P. 26(b)(3)).

In evaluating whether material was prepared in anticipation of litigation, the D.C. Circuit has adopted a "because of" test. *Equal Emp't Opportunity Comm'n v. Lutheran Soc. Servs.*, 186 F.3d 959, 968 (D.C. Cir. 1999). "This inquiry encompasses two related but distinct concepts—one a question of timing and the other a question of intent." *Animal Welfare Inst. v. Nat'l Oceanic & Atmospheric Admin.*, 370 F. Supp. 3d 116, 135 (D.D.C. 2019) (citing *U.S. ex rel. Fago v. M & T Mortg. Corp.*, 242 F.R.D. 16, 18 (D.D.C. 2007)).

The threshold temporal inquiry considers "whether there was 'a subjective belief that litigation was a real possibility' *at the time* the document was prepared and whether that belief was 'objectively reasonable.'" *Id.* (quoting *Lutheran Soc. Servs.*, 186 F.3d at 968) (emphasis added). In the present case, Debra Bonamici, an Assistant United States Attorney directly familiar with the investigation's evidence and strategy, declared that the interviews were conducted while the "investigation [was] moving rapidly toward indictment." Bonamici Decl. ¶ 7. Specifically, Mr. Blagojevich was arrested on a criminal complaint on December 9, 2008, *id*. ¶ 5, and the interviews at issue here were also conducted by the FBI in December 2008, while the government was moving toward indictment. *Id*. ¶ 8. The fact that Mr. Blagojevich had already been arrested on a criminal complaint on December 9, 2008—the same month the relevant interviews were conducted—demonstrates that the DOJ was actively engaged in litigation against Mr. Blagojevich, not merely contemplating it. *Id*.; *see also* Def.'s Mem. at 14. Without

7

doubt, the FBI interviewed the Obama Administration officials and prepared the Forms 302 reflecting those interviews when litigation was in the offing.

Once it is established that litigation was reasonably anticipated, the second element of the "because of" test—"the motivational element"—"demands that the document be prepared or obtained because of the prospect of litigation." *Animal Welfare*, 370 F. Supp. 3d at 135 (citing *Lutheran Soc. Servs.*, 186 F.3d at 968). "[T]he question is whether [the document] records information prepared by [the attorneys] or [their] representatives because of the prospect of litigation." *Deloitte*, 610 F.3d at 137.

In the instant matter, "[t]he interviews were conducted for the purpose of gathering evidence that could be presented to a grand jury and that could factor into the case to be presented at the trial of Blagojevich and others." Bonamici Decl. ¶ 8. Judicial Watch argues that the Forms 302 cannot be protected by the attorney work-product doctrine because FBI policy compels all agents "to complete and submit an FD-302 form to document all subject and witness interviews." Decl. of Michael J. Sharkey (Sharkey Decl.) [Dkt. 15-1] ¶ 3. However, the fact that agency policy requires the creation of Forms 302 does not negate attorney work-product protections in the appropriate circumstances, as "material generated in anticipation of litigation may also be used for ordinary business purposes without losing its protected status." *Deloitte*, 610 F.3d at 138. Per *Deloitte*, the germane inquiry is whether the Forms 302 would have been prepared by the FBI agents but for the impending prosecution of Mr. Blagojevich. *Id.* ("[A] document can contain protected work-product material even though it serves multiple purposes, so long as the protected material was prepared because of the prospect of litigation."); *see also United States v. Adlman*, 134 F.3d 1194, 1195 (2d Cir. 1998) ("Where a document was created because of anticipated litigation, and would not have been prepared in substantially similar form

but for the prospect of that litigation, it falls within Rule 26(b)(3).").  Because the interviews occurred and the Forms 302 were drafted "for the purpose of gathering evidence that could be presented to a grand jury and that could factor into the case," Bonamici Decl. ¶ 8, the Forms 302 were prepared in anticipation of litigation.

Judicial Watch further argues that the Forms 302 are not attorney work product because they were not prepared by an attorney.  Attorney work product frequently includes records created by an attorney himself *and* "material prepared by agents for the attorney." *United States v. Nobles*, 422 U.S. 225, 238-39 (1975).  Thus, the scope of work product recognizes that "attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial." *Id.* at 238.  However, there are sensible limits on the protection extended to documents prepared by law enforcement personnel to assist prosecuting attorneys as "it is not necessarily the case that when a law enforcement agent conducts a witness interview as part of a criminal investigation, he does so as an agent of a Government attorney." *United States ex rel. Landis v. Tailwind Sports Corp.*, 303 F.R.D. 419, 424 (D.D.C. 2014).  Law enforcement agents operating in their independent investigatory capacities are not usually considered attorney agents whose notes are protected as attorney work product, but once they are acting in a supportive role to an attorney preparing a case for indictment or prosecution, the attorney work-product protection applies to their work product under FOIA Exemption 5.

After considering the circumstances surrounding the interviews and preparation of the Forms 302, this Court finds that the FBI agents were acting as agents of attorneys in the Chicago Office of the United States Attorney when they drafted the Forms 302 and, therefore,

that those records are protected from release under FOIA by the attorney work-product doctrine recognized in Exemption 5. As explained by Ms. Bonamici:

> During December 2008, the USAO, FBI, and other investigative agencies continued to collaborate in selecting, planning, and conducting interviews and gathering additional evidence . . . in support of the USAO's effort to indict, and subsequently try, Blagojevich and others. . . . [T]he assigned prosecutors steered investigative efforts, focusing on information needed to make charging decisions, support anticipated charges, and, ultimately, to present at trial. . . . [A]ssigned prosecutors spoke and met with agents several times per day to identify additional witnesses that needed to be interviewed, and strategize regarding the scope of those interviews.

Bonamici Decl. ¶ 7. For the specific high-level interviews at issue, the "[p]rosecutors participated in selecting these witnesses . . . , discussing and determining in advance the investigative strategy for each interview, and questioning the witnesses." *Id*. ¶ 8. The FBI agents were working under the direction of Assistant United States Attorneys (AUSAs) and in support of their decisions concerning the Blagojevich indictment and trial. The lawyers "rel[ied] on the assistance of investigators and other agents in the compilation of materials in preparation for trial" so that those materials share the protections of attorney work product. *Nobles*, 422 U.S. at 238.

Judicial Watch's remaining arguments are centered around attempts to distinguish the Forms 302 at issue here from records protected in other Exemption 5 cases. First, Judicial Watch distinguishes the records addressed in *New York Times Co. v. Department of Justice*, 138 F. Supp. 3d 462 (S.D.N.Y. 2015), by pointing out that here, these Forms 302 were neither drafted nor edited by AUSAs. However, *New York Times* did not revolve around whether the Forms 302 were drafted or edited by an attorney. Rather, it held that Forms 302 could be protected by the attorney work-product doctrine "when they reveal an attorney's strategic impressions and mental

10

processes," which "could occur through the attorney's mere selection of whom to interview." *New York Times*, 138 F. Supp. 3d at 472. "Similarly, the questions [an attorney] or his subordinates ask witnesses almost certainly reveal his thinking about the substance of the case." *Id.* at 475-76. The Bonamici Declaration makes clear that the interviewees were selected by attorneys and both AUSAs and FBI agents participated in the interviews. Bonamici Decl. ¶¶ 7-8. *New York Times* would protect these records under the attorney work-product doctrine.

Similarly, this case is not legally distinguishable from *Martin*, 819 F.2d 1181, as much as Judicial Watch tries to make it so: The theory is that because the AUSAs had no "involvement in preparation of the 302s," the Forms 302 are not similar to the records in *Martin*. Pl.'s Reply at 5. But Judicial Watch understates the similarities. In *Martin*, the protected records were entirely drafted by the witnesses, after attorneys coordinated and selected interviewees. *See* 819 F.2d at 1183. These facts track the present issue, where FBI agents prepared the Forms 302 after witness interviews for which the AUSAs had selected the subjects, coordinated the questioning and strategy, and had been participants. *See* Bonamici Decl. ¶ 7. Judicial Watch suggests a new limit on the scope of the attorney work-product doctrine, arguing that the government does not claim that attorneys specifically directed the FBI agents to prepare Forms 302 after the interviews. However, the Bonamici Declaration makes it clear that the AUSAs "rel[ied] on the assistance of investigators and other agents in the compilation of materials in preparation for trial." *Nobles*, 422 U.S. at 238.

Because the Forms 302 were prepared in anticipation of impending litigation by FBI agents acting under the substantial direction of Assistant United States Attorneys, they are records exempt from FOIA release as attorney work product under Exemption 5.

### C. Segregability

FOIA contains a segregation clause that demands all reasonably segregable, non-exempt material be released to a requester. 5 U.S.C. § 552(b). The specific issue presented here—whether records protected from disclosure by Exemption 5's work-product doctrine can contain segregable material—was decided in another FOIA dispute between the parties. *See Judicial Watch*, 432 F.3d at 370. There, the D.C. Circuit held that the government was "on the mark" when it stated in its appellate brief that "where a document is withheld pursuant to the work-product doctrine, there simply are no reasonably segregable portions . . . to release *after* deletion of the portions which are exempt." *Id.* (quoting 5 U.S.C. § 552(b) (internal quotation marks omitted)). Accordingly, as the entire contents of the records at issue here constitute attorney work product, protected from disclosure by Exemption 5 in their entirety, there is no segregable information. For this reason, the Court declines the request of Judicial Watch that it review the Forms 302 in camera to determine if any information may be produced.

### IV. CONCLUSION

For reasons stated above, the Court will grant DOJ's Motion for Summary Judgment, Dkt. 13, and will deny Judicial Watch's Cross-Motion for Summary Judgment, Dkt. 16. A memorializing Order accompanies this Memorandum Opinion.

Date: June 25, 2019

ROSEMARY M. COLLYER
United States District Judge